# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
### SOUTHERN DIVISION

LEICA GEOSYSTEMS, AG,

    Plaintiff,

vs.                                          CASE NO. CV-07-J-1614-S

JEFFERSON COUNTY
COMMISSION, et al.,

    Defendants.

## MEMORANDUM OPINION

    Pending before the court are cross-motions for summary judgment. Plaintiff filed a motion for summary judgment and a brief in support of motion for summary judgment (doc. 31) and evidentiary submissions in support of summary judgment (doc. 32). Defendants filed a motion for summary judgment (doc. 33), a brief in support of motion for summary judgment (doc. 34), and evidentiary submissions in support of summary judgment (doc. 35). Plaintiff filed a response (doc. 38). Defendants filed a reply (doc. 42).

Having considered all the pleadings and submissions, the court concludes that defendants' motion for summary judgment is due to be granted as no genuine issues of material fact remain and defendants are entitled to a judgment in their favor as a matter of law.

## I. Procedural History

Plaintiff commenced this action by filing a complaint (doc. 1) against Jefferson County, Alabama and members of the Jefferson County Commission, alleging breach of contract, a demand for judgment for an accounting and assessment, and a declaratory judgment for recoverable monies. Plaintiff later amended its complaint (doc. 20) by joining George Bowman as a defendant, reasserting its previous claims, and adding claims for breach of warranty, breach of representation, and breach of letter of credit beneficiary warranty.

## II. Factual Background

On April 30, 2002, NovaLIS Technologies Ltd. ("NovaLIS") and defendant Jefferson County, Alabama entered into the NovaLIS Technologies Ltd. Integrated Tax System Master Agreement ("Contract"). Exhibit C to Defendants' Summary Judgment. The Contract incorporated a Statement of Work ("SOW"), which provided that NovaLIS would customize and install Assessment Office software for the Jefferson County Board of Equalization and the Jefferson County Tax Assessor. *Id.*; Exhibit 6 to Martin Tremp depo. The SOW also stated that NovaLIS would "make every effort to meet the agreed upon eighteen (18) month schedule" for the project's completion. Exhibit 6 at § 1.4 to Martin Tremp depo.

Section 5.4 of the Contract addressed issues relating to payment and security

for the project, requiring NovaLIS to obtain a letter of credit and stating in relevant part:

> In lieu of a performance bond, NovaLIS shall provide a letter of credit in the form and on terms as required by this section 5.4 and, upon execution, which will be attached hereto as schedule D ("LOC"). The LOC shall allow Jefferson County to issue a demand up to the full amount of the contract price as set out in the SOW upon a failure of NovaLIS to fulfill a material condition or upon termination of this Agreement pursuant to section 6.3 (Termination for Cause) where NovaLIS is the defaulting party.

Exhibit 5 at § 5.4 to Martin Tremp depo. The letter of credit was for the amount of $1,616,000.00, and such funds were "to be used solely for the purpose of mitigating Jefferson County's actual losses." *Id.*; Exhibit 7 to Martin Tremp depo. The Contract also included a nontransferability clause:

> This Agreement shall be binding on and enure to the benefit of NovaLIS, Jefferson County and their successors and permitted assigns. This Agreement may not be transferred or assigned by any party or by operation of law without the prior written consent of the other party; any attempt by any party to transfer or assign the Agreement or its rights hereunder shall constitute a material breach of this Agreement.

Exhibit 5 at § 10.8 to Martin Tremp depo.

Because NovaLIS was financially incapable of obtaining a large monetary sum in a letter of credit, plaintiff Leica Geosystems, AG–a NovaLIS minority shareholder–applied for the letter of credit on behalf of NovaLIS. Martin Tremp depo. at 37, 40-41. The NovaLIS board of directors proposed the idea that plaintiff

apply for the letter of credit. *Id.* at 136-39.[1]  Credit Suisse First Boston issued the letter of credit, listing plaintiff as the applicant and the Jefferson County Commission as the beneficiary.  Exhibit 7 to Martin Tremp depo.  The Contract, under Schedule D, incorporated the letter of credit by reference and additionally noted that plaintiff was the applicant and that the letter of credit was executed in Jefferson County's favor.  Exhibit 5 at Schedule D to Martin Tremp depo.  Schedule D made no mention of plaintiff's minority shareholder status in NovaLIS.  *Id.*

Aside from Schedule D and the incorporation of the letter of credit, plaintiff's name was absent from the Contract.  Exhibit 5 to Martin Tremp depo.  The Contract expressly stated that the agreement was "entered into by and between NovaLIS . . . and [the] Jefferson County Commission."  *Id.* at p. 1.  It further provided that the "[a]greement shall be binding on and enure to the benefit of NovaLIS, Jefferson County and their successors and permitted assigns."  *Id.* at §10.8.  Section 5.1 of the Contract and section 3 of the SOW implemented a payment schedule between NovaLIS and Jefferson County, which required Jefferson County to make payments to NovaLIS commensurate with the work performed.  *Id.* at § 5.1; Exhibit 6 at § 3 to Martin Tremp depo.

---

[1] Jefferson County did not ask plaintiff to apply for the letter of credit on behalf of NovaLIS. Martin Tremp depo. at 137-39.

NovaLIS began work on the project, but it failed to meet the first deadline, or "go-live date," of September 2003. Exhibit 6 at § 3.5 to Martin Tremp depo.; Jason Foster depo. at 304, 306. In March 2005, when the project was still incomplete, Jefferson County sent a letter to NovaLIS informing it that Jefferson County was terminating the Contract as a result of "breaches or defaults of material provisions" of the Contract by NovaLIS. March 17, 2005 Letter, Exhibit L to Defendants' Summary Judgment. Jefferson County specifically cited NovaLIS' failure to meet certain deadlines and other relevant completion dates. *Id.* Throughout the course of NovaLIS' performance, Jefferson County paid NovaLIS in excess of $1,400,000.00 under the Contract. Martin Tremp depo. at 85-86.

NovaLIS made two final attempts to deliver a workable product in September and November of 2005, but Jefferson County alleged that it did not function properly. Wayne Michael Cree depo. at 187-88; Otis Brown depo. at 172-73. During this time period, plaintiff entered into an agreement with NovaLIS and ESRI Canada Ltd. ("ESRI") on October 28, 2005, agreeing to sell its interest in NovaLIS to ESRI. Exhibit 3 to Martin Tremp depo. The agreement limited NovaLIS' rights to the letter of credit funds at issue, stating that "any monies drawn on the letter of credit . . . are impressed with a trust" in plaintiff's favor. *Id.* at 8. NovaLIS additionally "waive[d] and release[d] any right, title or interest it may have against any Recoverable Monies"

under the letter of credit. *Id.* Plaintiff then entered into a settlement agreement with NovaLIS and ESRI on the same date, which provided that ESRI would hold any monetary recovery obtained under the letter of credit in trust for plaintiff. Exhibit 2 at 3 to Martin Tremp depo.

On November 4, 2005, NovaLIS filed a Notice of Intention to Make a Proposal under Section 50.4 of the Bankruptcy and Insolvency Act of Canada. March 10, 2006 Letter at 2, Exhibit P to Defendants' Summary Judgment. Soon thereafter, Jefferson County drew the entire amount of $1,616,000.00 under the letter of credit on January 12, 2006, citing NovaLIS' failure to fulfill a material condition of the Contract. January 11, 2006 Letter and January 12, 2006 Letter, Exhibit Z to Defendants' Summary Judgment. In accordance with its bankruptcy, NovaLIS sold its assets and intellectual property on January 25, 2006, and NovaLIS notified Jefferson County that it was terminating the Contract on February 15, 2006. February 15, 2006 Letter, Exhibit bb to Defendants' Summary Judgment. Plaintiff later notified Jefferson County that it had standing to assert claims against Jefferson County for an accounting and reimbursement under the letter of credit. July 14, 2006 Letter, Exhibit cc to Defendants' Summary Judgment.

### III. Standard of Review

Under Federal Rule of Civil Procedure 56(c), summary judgment is proper "if

the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986). As the Supreme Court has explained the summary judgment standard:

> [T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be "no genuine issue as to any material fact," since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial.

*Celotex Corp.*, 477 U.S. at 322-23. The party moving for summary judgment always bears the initial responsibility of informing the court of the basis for its motion and identifying those portions of the pleadings or filings which it believes demonstrates the absence of a genuine issue of material fact. *Id.* at 323. The burden then shifts to the nonmoving party to "go beyond the pleadings and by . . . affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex*, 477 U.S. at 324; Fed. R. Civ. Pro. 56(e). In meeting this burden the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts."

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). That party must demonstrate that there is a "genuine issue for trial." Fed. R. Civ. Pro. 56(e); *Matsushita*, 475 U.S. at 587. *See also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).

"The mere existence of some factual dispute will not defeat summary judgment unless that factual dispute is material to an issue affecting the outcome of the case. The relevant rules of substantive law dictate the materiality of a disputed fact. A genuine issue of material fact does not exist unless there is sufficient evidence favoring the nonmoving party for a reasonable jury to return a verdict in its favor." *Chapman v. AI Transport*, 229 F.3d 1012, 1023 (11th Cir. 2000) (quoting *Haves v. City of Miami*, 52 F.3d 918, 921 (11th Cir. 1995)). A factual dispute regarding a non-material issue will not preclude the defendant from succeeding on a motion for summary judgment. *Brown v. American Honda Motor Co.*, 939 F.2d 946, 953 (11th Cir. 1991). However, the court should not make credibility determinations, nor weigh the parties' evidence. *See Stewart v. Booker T. Washington Ins.*, 232 F.3d 844, 848 (11th Cir. 2000).

## IV. Legal Analysis

Plaintiff seeks summary judgment under three counts of its amended complaint: (1) breach of contract, (2) declaratory judgment for recoverable monies, and (3)

breach of letter of credit beneficiary warranty. Defendants seek summary judgment on all of plaintiff's claims by arguing that plaintiff lacks standing. For the reasons stated below, the court concludes that defendants' motion for summary judgment is due to be granted because plaintiff was not a party to the Contract between NovaLIS and defendants.[2] Likewise, plaintiff was not a third-party beneficiary of the Contract.

*Third-Party Beneficiary*

"It is well-established that the parties to a contract may create rights in a third-party beneficiary by manifesting an intention to do so." *Beverly v. Macy*, 702 F.2d 931, 940 (11th Cir. 1983). "'The crucial inquiry involves a determination of intent, and third parties may sue on the contract only if it may be said to have been intended for their direct, as opposed to incidental, benefit.'" *Id.* (quoting *Ross v. Imperial Constr. Co.*, 572 F.2d 518, 520 (5th Cir. 1978)). Restatement (Second) of Contracts states as follows:

> (1) Unless otherwise agreed between promisor and promisee, a beneficiary of a promise is an intended beneficiary if recognition of a right to performance in the beneficiary is appropriate to effectuate the intention of the parties and either (a) the performance of the promise will satisfy an obligation of the promisee to pay money to the beneficiary; or (b) the circumstances indicate that the promisee intends

---

[2] Plaintiff filed a response to defendants' motion to dismiss, asserting that plaintiff was "not a party to the Contract and, therefore, the forum selection clause of the Contract is inapplicable to the claims made by Leica under the letter of credit augmented by other limited provisions of the Contract." Doc. 11 at 3.

> to give the beneficiary the benefit of the promised performance. (2) An incidental beneficiary is a beneficiary who is not an intended beneficiary.

*Restatement (Second) of Contracts* § 302 (1981). The Eleventh Circuit has stated that "the key inquiry is whether the claimant was intended to be benefitted by the contract provision in question." *Beverly*, 702 F.2d at 940. Additionally, one may still be an intended beneficiary despite the fact that it is not identified when the contract is created. *Id.* (citing *Restatement (Second) of Contracts* § 308 (1981)). The court may also look outside "the contract to the circumstances surrounding its formation" when determining third-party beneficiary status. *Beverly*, 702 F.2d at 940.

Plaintiff has failed to demonstrate its intended third-party beneficiary status under the Contract. When looking at the Contract itself, plaintiff is referenced twice: (1) under the letter of credit that is incorporated by reference and (2) at Schedule D. Exhibit 7 to Martin Tremp depo.; Exhibit 5 at Schedule D to Martin Tremp depo. Although plaintiff is listed as the "applicant" of the letter of credit and defendant is listed as the "beneficiary" of the letter of credit in these two instances, there is no indicia that NovaLIS and defendant–the contracting parties–intended to benefit plaintiff. *Id.* In fact, several provisions in the Contract negate plaintiff's third-party beneficiary argument. The Contract stated that the "[a]greement shall be binding on and enure to the benefit of NovaLIS, Jefferson County and their successors and

permitted assigns." Exhibit 5 at § 10.8 to Martin Tremp depo. Furthermore, the Contract was "entered into by and between NovaLIS . . . and [the] Jefferson County Commission." *Id.* at p. 1. Throughout the course of the project, defendants made over $1,400,000.00 in payments to NovaLIS, as it was directed to do under the Contract. Martin Tremp depo. at 85-86; Exhibit 5 at § 5.1 to Martin Tremp depo.; Exhibit 6 at § 3 to Martin Tremp depo. Plaintiff's financial investment via the letter of credit is insufficient to transform it into an intended third-party beneficiary, especially when defendants, as evidenced by the Contract provisions stated above, had no intention to benefit plaintiff. *See Airlines Reporting Corp. v. Higginbotham*, 643 So.2d 952, 954 (Ala. 1994) (holding that an individual who applied for a letter of credit on behalf of a corporation "was not an intended (or even incidental) beneficiary" with regard to the underlying contract between the corporation and the defendant).

Plaintiff cites to *Beverly* for authority that it is a third-party beneficiary, but the Eleventh Circuit's reasoning is not applicable to the facts of the present case because the facts are distinguishable. In *Beverly*, the court held that an insured was a third-party beneficiary to a service contract between the insurer and an association of insurance companies who provided flood insurance policies to the public. *Beverly*, 702 F.2d at 942-43. In finding third-party beneficiary status, the court emphasized

both the language incorporated into the contract that required the insurer and the association to notify the insured prior to lapse and the insured's reliance on receiving notices in the past. *Id.* at 938-39, 941-42.

Plaintiff's status is not analogous. The Contract expressly provided that the agreement was "entered into by and between NovaLIS . . . and [the] Jefferson County Commission." Exhibit 5 at p. 1 to Martin Tremp depo. Additionally, the language in the Contract, as well as the surrounding circumstances, did not impose a duty on defendants or NovaLIS with regard to plaintiff. Exhibit 5 to Martin Tremp depo. The Contract contained a nontransferability clause, providing that the Contract "may not be transferred or assigned by any party or by operation of law without the prior written consent of the other party," and any assignment or transfer would constitute a material breach of the Contract. Exhibit 5 at § 10.8 to Martin Tremp depo.

Plaintiff argues that the *Beverly* reliance factor weighs in its favor since it relied upon defendants to remit certain funds as required by the Contract. Doc. 31 at 10-11. Plaintiff's reliance, however, is not comparable to the insured who had previously received notices. In fact, there was no correspondence between plaintiff and defendants regarding the NovaLIS project. Martin Tremp depo. at 120-21, 138-39. Even if plaintiff had sufficiently relied, "reliance, by itself, would not allow a court to read into the contract terms that do not exist." *Beverly*, 702 F.2d at 941-42.

Plaintiff also cites to *Riegel Fiber Corp. v. Anderson Gin Co.*, 512 F.2d 784 (5th Cir. 1975), in support of its third-party beneficiary argument. In *Riegel*, the Fifth Circuit applied Alabama contract law to determine that a cotton buyer was a third-party beneficiary to contracts between the cotton buyer's direct suppliers and two cotton gin companies who essentially served as intermediaries. *Id.* at 787-88. There, the evidence showed that the cotton buyer had entered into a contract with the intermediaries for the purchase of cotton, and the intermediaries had entered into contracts with the direct suppliers for the purchase of cotton. *Id.* at 786. The direct suppliers knew that the cotton buyer would be the last purchaser of the cotton, leading the court to decide that "in substance[,]" the cotton buyer "was making a direct purchase" from the direct supplier. *Id.* at 786, 788. The court was able to come to this conclusion by taking account of "the circumstances surrounding the making of the contract." *Id.* at 787.

In the present case, all surrounding circumstances indicate that there was no intended beneficiary to the Contract, aside from the *actual parties* to the Contract: NovaLIS and defendants. NovaLIS, unlike the cotton gin companies in *Riegel*, did not serve as an intermediary between plaintiff and defendants. Rather, NovaLIS received over $1,400,000.00 in payments from defendants, and there is no evidence that NovaLIS remitted those payments to plaintiff. Martin Tremp depo. at 85-86. As

referenced earlier, the Contract provided that any remitted payments shall go to NovaLIS. Exhibit 5 at § 5.4 to Martin Tremp depo. If this court adopted plaintiff's theory, every shareholder in NovaLIS would be a third-party beneficiary as a result of each shareholder's financial investment.

## V. Conclusion

Having considered the foregoing and finding that plaintiff has failed to establish any genuine issue of material fact sufficient to allow this case to proceed to trial on its claims against defendants, the court **ORDERS** that defendants' motion for summary judgment be and hereby is **GRANTED**. The court shall so rule by separate Order.

**DONE** and **ORDERED** this 9th day of September 2008.

_____
INGE PRYTZ JOHNSON
U.S. DISTRICT JUDGE